### Emanuel Mandel et al. v. John J. Wheeler, Administrator of Charles Fink.

1. PERSONAL INJURIES—*Persons upon Premises by Invitation—Duty of the Owner.*—Where a person is upon the premises of another by his invitation, the owner is under obligation to use reasonable care to prevent injury to such person from conditions of the premises which he knows or ought to have known.

2. ORDINARY CARE—*Without the Exercise of, There Can Be No Recovery.*—Where one of a number of persons employed in making repairs in a large room through which passed a steam pipe, left his work to see what was the matter with the pipe, and upon approaching the pipe it burst and he was killed, the others not being injured, *it was held*

that as it was not a part of his business to look after the pipes, he was not, at the time of the explosion, in the exercise of ordinary care for his safety, and his personal representatives could not recover.

**Trespass on the Case**, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. NATHANIEL C. SEARS, Judge, presiding. Heard in this court at the March term, 1895. Reversed. Opinion filed July 5, 1895.

## STATEMENT OF THE CASE.

Appellants are the owners of a retail dry goods store in the city of Chicago. This store is in two buildings. Between these two buildings and separating them is an alley. Under each of the stores is a basement. The two buildings and basements are used in conjunction. On March 19, 1891, the steam pipe which furnished heat and power to the Wabash building was a ten inch pipe, which ran from the boilers under the alley through the cellar walls and into the Wabash avenue basement. Considerable repairs were being done by the defendants at the time of the accident, and a number of workmen belonging to different contractors were then employed in the Wabash avenue basement. One Craig had the contract for building engine foundations, and Knisely had the contract for putting in a corrugated ceiling. The room in which they were working and into which this pipe ran was about 135 feet long and about twenty-five feet wide. The steam fitting was not quite complete, but this pipe had been used and steam had been turned into it during and about a week previous to the accident.

Charles Fink and one Daniel Lewis were working for Knisely upon the ceiling, taking down the plaster. The ceiling was eight feet high, and it was necessary to construct a platform upon which to work in order to take off the plaster and afterward to put on the iron ceiling. The two men continued to construct the platform as they went along with the work. They commenced at the east side of the room and worked toward the west side. The platform was made of wooden horses upon which were laid loose planks. These planks were picked up from the floor and a number of loose planks were lying all over the basement, some being in the

west end within ten feet of the T which burst. Between half past eight and nine o'clock of the morning of March 19th, an engineer of the defendants, by the order of their chief engineer, Nelson, turned the steam into this pipe. Almost immediately there commenced a bumping sound in the pipes and steam and water began to escape. This continued for seven or eight minutes. The steam got thick, so that it was like a fog. All the workmen noticed it, but none of them left the room until after the explosion. Bryant, appellant's witness, says he hallooed to Nelson that this thing was going to burst, but says that he was only joking. Fink finished his part of the ceiling where he was working. Lewis had not quite finished. Fink got down from the scaffold and it is stated, said, as he got down, that he was going for a plank. Planks were lying all over the west end of the basement. He started and walked over to where the water and steam were coming out; the steam was getting thicker as he approached the T. He reached up toward the pipe; just then it exploded, he being within two feet thereof. The T burst with terrific explosion. The steam and water flew upon Fink and scalded him to death. No other person was injured.

There was a verdict and judgment for appellee from which this appeal is prosecuted.

JOHN A. POST, attorney for appellants; SAMUEL S. PAGE, of counsel.

FRANCIS T. COLBY and KAVANAGH & O'DONNELL, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The deceased being upon the premises of the defendants by their invitation, they were under obligation to use reasonable care to prevent injury to him from conditions of their place, which they knew, or ought to have known, he exercising ordinary care for his own safety. Indemaur v. Dames, L. R., 2 C. P. 311.

It is the settled rule in this State that a plaintiff, to recover for personal injuries occasioned by the negligence of another, must himself have been in the exercise of ordinary care.

The evidence here shows that the deceased, not in the discharge of a duty he owed to any one, went directly up to the T which burst, and while reaching up to it apparently "to take hold of the big valve," was injured by the explosion which at that instant occurred. There is evidence that when the deceased got off from the platform upon which he had been working, he said that he was going for a plank, but it does not appear that there was any necessity for his walking up to this T in order to get a plank; the planks were all about the west end of the basement. The testimony of the plaintiff's witnesses is such as to show that the deceased had much warning that there was trouble in the steam pipe. One of them says: "He (deceased) got down from the scaffold and walked right over to where the water and steam were coming out. He got near to it when it exploded. It was getting worse and worse, and the noise was getting louder and louder, and the water coming out faster and faster as he approached it."

The same witness also said: "I heard the noise when it first started. It got louder and louder and leakier and leakier and steamier and steamier. I could see the water spouting out and could also hear it clanking in the pipes."

There is no evidence tending to show that had the deceased remained with his co-laborer, or gone elsewhere than directly up to the T he would have been injured, and no evidence that, in order to get a plank, it was necessary for him to go where he did.

No one save the deceased was injured.

Reasonably careful and prudent persons do not, when exercising ordinary care, go up to steam pipes in which there is such manifest, unusual disturbance, and from which there is such apparent danger.

The judgment of the Superior Court is reversed upon a finding of facts to be here made.