## Jacob Beemsterboer, Administrator, Plaintiff in Error, v. City of Chicago, Defendant in Error, et al.

## Gen. No. 15,740.

NEGLIGENCE—*when city not liable for injury resulting from electric lamp.* If electric lamps are furnished by an independent corporation to a city and if the obligation for the maintenance thereof is solely upon such corporation, and if the city bear to such corporation a relation no different from that of any other customer, the administrator of

a servant of the city killed by an electric shock while as a volunteer, acting under no orders, seeking to adjust such lamp, cannot recover of such city.

Action in case for death caused by alleged wrongful act. Error to the Circuit Court of Cook county; the HON. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed November 28, 1911.

CHARLES J. TRAINOR, for plaintiff in error.

WILLIAM H. SEXTON and N. L. PIOTROWSKI, for defendant in error; DAVID R. LEVY and EDWARD C. FITCH, of counsel.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

Plaintiff in error, as administrator, brought suit in the Circuit Court of Cook county against the Commonwealth Electric Company and the City of Chicago to recover $10,000, for their alleged negligence, which resulted in the death of plaintiff's intestate. A trial was had in February, 1909, at the close of which the court took the case from the jury, and instructed a verdict in favor of each of the defendants, whereupon the plaintiff brought the cause to this court upon writ of error. On the 26th of October of that year, the cause was dismissed as to the Commonwealth Electric Company by stipulation. We are asked to reverse the judgment of the court below upon the ground that the court improperly withdrew the cause from the jury by its peremptory instruction in favor of both of the defendants.

The City of Chicago assigns as cross error the action of the court below in sustaining a demurrer to its plea of the Statute of Limitations.

It appears that on December 18, 1906, George Beemsterboer was killed at one of the pumping stations of the City of Chicago, in which he had been employed by the city as an oiler for about two months, his duties be-

ing to oil and polish the machinery there. The pumping station had been recently constructed and was not then entirely finished. The engine in operation there was large, and to light it and the engine room, there was suspended near it a large electric lamp, installed and maintained by the defendant, Commonwealth Electric Company. This lamp was suspended by a rope running over a pulley, and could be lowered to any desired position. It was defective at the time, and had been regulated by the Commonwealth Company several times shortly before the accident. On the night of the injury, the lamp again got out of order, and the engineer lowered it with the intention of changing the carbons in it, so it would burn, he himself standing upon a dry blank, and thus insulating himself. Beemsterboer held a lantern so that the engineer could see to perform the work. While thus engaged the engineer removed a carbon from the lamp and handed it to deceased. He then told deceased to raise his lantern higher, so that he could see better, and in raising it, either the lantern or the stick of carbon, which Beemsterboer was holding in his hand, came in contact with the lamp, from which he received the electric shock which killed him. Until this occasion, the engineer had never attempted to adjust or put new carbons into the lamp, and it does not appear that the deceased was aware that the lamp was charged, nor that the engineer notified him that there was any danger, though there was passing through the lamp a heavy current of electricity,—approximately 5500 volts.

Plaintiff claimed that the Commonwealth Company was liable for allowing the defective lamp to remain in the building under the circumstances, and that the City of Chicago, as employer of the deceased, was negligent in ordering him to raise the lantern so that he came in contact with the lamp and in not informing him that the lamp was heavily charged with an elec-

tric current, and, therefore, dangerous.

With the question of the liability of the Commonwealth Electric Company, we have nothing to do, that defendant having been dismissed out of the case. The sole question before us is whether, upon the record in this case, a liability is established against the City of Chicago. It is conceded that the Commonwealth Electric Company owned the lamp,—that it was installed by it for the purpose of furnishing light to the employes of the pumping station, and that it was the duty of the electric company to properly maintain it.

The declaration avers that the duties of decedent were: "that, as such oiler, his work consisted in keeping the machinery in said pumping station oiled and cleaned, and free from rust." And it is also averred that "the work on, around and about such lamp was different than the work he had been hired to perform."

It is further averred that the defendant electric company owned, controlled and operated the lamp with its entire apparatus attached thereto. The testimony seems to fully support these allegations, and to show, in addition, that the City was under no obligation or duty respecting the care or maintenance of said lamps, but occupied the same relation to the Commonwealth Company in relation thereto as did any other of its customers using electric light.

We do not find the evidence tending to show that the engineer at the time of the accident ordered or even requested the deceased to assist him by holding the lantern for him or otherwise. We think it a fair conclusion from the testimony that the decedent was merely a volunteer, and, though doubtless actuated by good motives, and a desire to assist, he was, nevertheless, acting outside the scope of his employment. And the evidence seems also to warrant the conclusion that the engineer himself, in attempting to adjust the lamp, was acting outside the scope of his employment.

The pumping station in question was used exclusively for the purpose of pumping sewerage from the level of one system of sewers into a great intercepting sewer, from which it was carried into the drainage canal. For the purpose of lighting this station, the city bought electric light service from the Commonwealth Company, the wires, lamp, carbon, current and care of them all being furnished by the company. With none of them was the city concerned, nor had it anything to do with any of them. The company was obligated to furnish the light, and the city's obligation was but to pay therefor. The city had provided its employes there other lights, consisting of kerosene lamps of various sizes and shapes, to furnish illumination in the event that the electric lights should fail. Some of these lamps had reflectors and some could be carried about by the employes when and where needed.

Not only did plaintiff fail to prove that the engineer had authority to himself handle the electric lights, or direct his subordinates to do so, but the testimony of the chief engineer, who was called by the plaintiff, was to the effect that even he had no right or authority to handle the electric lights, nor to direct his subordinates to do so. There is some testimony in the record to the effect that several of the employes trimmed, or tried to trim, the electric lights, but nothing to show that such service was other than voluntary, or that they considered themselves authorized to do so by any of their superior officers, nor, indeed, that their superiors had any knowledge of such a practice.

We think the testimony fully justifies the conclusion that, as to furnishing electric light for the pumping station in question, the electric company had exclusive charge, care and management of the entire electric lighting apparatus, and that as to the care of the lights of the company the city stood in the same relation as would any other customer.

We cannot see upon the evidence in this record any

basis for holding the city liable on the ground that the deceased, being unfamiliar with the dangers of the situation, was ordered by his superiors to perform a dangerous task without being warned of the dangers. Nowhere can we find any evidence that the engineer ordered or directed deceased to assist him in any manner. On the contrary, the testimony is unequivocal that no such order or request was made. It seems reasonably clear that deceased voluntarily brought the lantern and held it while the engineer was attempting to adjust the lamp, and it is evident from the testimony that decedent came to his death as a result of an accident. Numerous cases establish the proposition that a servant, who is injured while doing something outside the line of his duty, cannot recover. C. C. C. & St. L. Ry. Co. v. Carr, 95 Ill. App. 576; Mandel v. Wheeler, 59 Ill. App. 459; De Souza v. Stafford Mills, 155 Mass. 476; Baltimore & O. R. Co. v. Doty, 133 Fed. Rep. 866.

For the reasons given, we think the court below was justified in giving the peremptory instruction complained of. The views we have already expressed render it unnecessary for us to consider the other questions discussed.

*Judgment affirmed.*